**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY HOWE,** | : | |
|     **Plaintiff** | : | |
|     v. | : | CIVIL ACTION NO. 1:16-0102 |
| **THE PENNSYLVANIA STATE UNIVERSITY - HARRISBURG, CHANCELLOR MULKUND KULKARNI, THOMAS STROHM, KARL MARTZ, and DONALD HOLTZMAN,** | :<br>:<br>:<br>: | (JUDGE MANNION) |
|     **Defendants** | :<br>: | |

**<u>MEMORANDUM</u>**

Pending before the court is the plaintiff's motion for an emergency temporary restraining order and/or preliminary injunction, ("TRO/PI"). (Doc. 5). In accordance with the court's oral ruling at the hearing on this matter, the plaintiff's motion for an emergency TRO/PI will be denied.

**I.    PROCEDURAL HISTORY**

By way of relevant background, the plaintiff filed a *pro se* complaint on January 19, 2016, in which he challenges disciplinary action taken against him by officials at the Pennsylvania State University, ("Penn State"), Harrisburg Campus, which includes a suspension for the Spring 2016 semester. (Doc. 1). On the following day, the plaintiff filed the instant motion for emergency injunctive relief, (Doc. 5), along with a supporting brief, (Doc.

6), in which he seeks to have this court "[halt] the imposition of the . . . suspension". The plaintiff filed an "additional" brief on January 21, 2016. (Doc. 8).

By order dated January 21, 2016, the court granted the plaintiff permission to proceed *in forma pauperis*, directed that the plaintiff's complaint be served upon General Counsel for Penn State, and set a hearing on the plaintiff's motion for TRO/PI for January 25, 2016. (Doc. 10).

On January 22, 2016, counsel entered their appearance on behalf of all defendants, (Doc. 14, Doc. 15). A brief in opposition to the plaintiff's motion for TRO/PI was filed on January 25, 2016, (Doc. 19), along with exhibits, (Doc. 17). The plaintiff filed his own exhibits that same day. (Doc. 20)[1].

At the hearing on the motion for injunctive relief, the court heard from the plaintiff; John A. Snyder, counsel for the defendants; and Karl Martz, the Assistant Director of Career Development and Student Affairs at Penn State. Given the time sensitive circumstances of this case, after hearing from the parties and considering the materials submitted by both sides, the court issued an oral ruling denying the plaintiff's motion for injunctive relief with an indication that this written decision would follow.

---

[1]As these exhibits contain personal information, including cell phone numbers, the court has placed these documents under seal.

## II. LEGAL STANDARD

The United States Court of Appeals for the Third Circuit has outlined four factors that a court ruling on a request for injunctive relief must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir. 2001). These same factors are used to determine a motion for a temporary restraining order. Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D.Pa.1994). The moving party bears the burden of establishing each of the four elements. Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000).

## III. DISCUSSION

The instant request for injunctive relief centers around the plaintiff's suspension from Penn State for the Spring 2016 semester. Testimony and documentation submitted by the parties indicate that the plaintiff is a third-year electrical engineering student at Penn State, Harrisburg Campus. In an "Allegation of Student Misconduct" report dated November 2, 2015, Richard Rocco, a Police Services Officer, reported to defendant Martz that, on

October 30, 2015 another student[2] reported to officials at the Penn State Harrisburg Police Department that the plaintiff had been harassing her both on and off campus. (Doc. 17, App'x 2). The complainant indicated that local police had been contacted and that the Pennsylvania State Police had advised the plaintiff not to have any contact with her for any reason. According to the report, the plaintiff would text and call the complainant repeatedly, even after having been advised to stop by the complainant. The reporting officer indicated that he was shown several text messages that contained "round about threats" from the plaintiff to the complainant. In addition, the complainant reported that the plaintiff would enter the same area of the library and sit close to her during her tutoring sessions with other students. On November 2, 2015, the date of the report, the complainant indicated that she moved from her regular seat in class to get away from the plaintiff, but that the plaintiff proceeded to move his seat near her, sit sideways facing her and did not say anything, but simply stared at her knowing that it was causing her distress.

After having received the Allegation of Student Misconduct, on November 9, 2015, defendant Thomas Strohm, Case Manager, Office of Student Conduct, issued the plaintiff a Notification of Administrative Directive,

---

[2]For reasons of privacy, the court identifies this individual as the "complainant".

in which the plaintiff was given formal notification that he was to have no contact, "either directly or indirectly, in person, electronically, by telephone or any other medium, physical or verbal with [the complainant]." (Doc. 17, App'x 3). The plaintiff was advised that indirect contact included "friends and acquaintances contacting [the complainant] on [the plaintiff's] behalf." The plaintiff was further advised not to post any remarks regarding the complainant on any social network. As per the Notification, the plaintiff was advised that "violation of this Administrative Directive is a violation of the student code of conduct and you may be subject to disciplinary action and sanctions including interim suspension, suspension, or expulsion from the University."

In accordance with the Code of Conduct and Student Conduct Procedures, ("Code of Conduct"), on November 17, 2015, defendant Strohm held a status conference with the plaintiff to discuss the allegations against him and inform him of his procedural rights, including the right to have an advisor throughout the process. (Doc. 17, App'x. 1, 4)[3]. A Student Conference

---

[3]Section V (A) (2) of the Code of Conduct provides:

After a report is filed, the Case Manager will meet with the respondent in a Conference. The Conference is an informal, non-adversarial meeting intended to allow the Case Manager to explain the conduct process, examine the complaint, listen to the respondent, discuss circumstances regarding the incident, and
(continued...)

Summary Form reflects that the plaintiff acknowledged having been advised of the charges against him, which included violations of Section 3.02 of the Student Code, Conduct which Threatens or Alarms, and Section 3.03 of the Student Code, Harassment by Communication. The plaintiff was also advised of the proposed sanctions for these violations, which included an academic suspension through the end of the Spring 2016 semester, participation in counseling, a favorable evaluation, participation in an online educational program, adherence to the administrative directive of no contact with the complainant and conduct probation with attendant transcript notation concluding in 2016. The plaintiff signed the Student Conference Summary Form acknowledging that he was advised of the allegations against him; that, if he accepted the charges and sanctions, the sanctions would go into effect immediately, unless otherwise indicated; he could contest the charges and request a hearing; if the recommended sanctions included probation with a transcript notation or a form of separation, he could request a sanction review; and that he could take three business days to respond to the charges and/or sanctions and, if he did not do so, the charges and sanctions would be assigned without further notice or option for review. At the student

---

[3](...continued)
address the respondent's questions.

(Doc. 17, App'x 1).

conference, the plaintiff chose to contest the charges and requested a hearing. Given the plaintiff's choice, a hearing was set on the charges for December 9, 2015.

Prior to the stated hearing, on November 30, 2015, the plaintiff violated the Administrative Directive by having direct contact with the complainant at her job at the Penn State Milton S. Hershey Medical Center. The complainant reported the incident to defendant Strohm. As a result, Mr. Strohm contacted the plaintiff to discuss the matter, advising him that he could bring his advisor if he wished. (Doc. 17, App'x 5). As the plaintiff was advised may happen, because of his violation of the Administrative Directive and the complainant's reported concern for her safety, on December 1, 2015, defendant Strohm issued the plaintiff a Notice of Interim Suspension in accordance with the Code of Conduct procedures.[4] (Doc. 17, App'x 6). The Notice informed the plaintiff that he was being assigned an interim suspension for approaching the

---

[4]Section V(F)(2) of the Code of Conduct provides, in relevant part,:

On rare occasion, the Office of Student Conduct may become aware of a student whose continued participation with the University community may pose an immediate threat to the student or others or may pose an imminent threat of a disruption to normal campus operations. If the Senior Director or designee reasonably believes that such a threat is posed, an interim suspension may be assigned.

(Doc. 17, App'x 1).

7

complainant on the evening of November 30, 2015 and attempting to make contact with her knowing that the Administrative Directive of no contact was in place, as well as directives of no contact by the Pennsylvania State Police and the Penn State Harrisburg campus police. The plaintiff was advised that the interim suspension was immediate and that he was not to "utilize or visit the campuses, programs or classes of The Pennsylvania State University unless given express written permission from the Senior Director of Student Conduct." The plaintiff was informed that failure to comply would lead to additional charges being brought against him by Penn State[5], as well as potential arrest by University police for criminal trespass. Again, the plaintiff was advised that he was to have no contact with the complainant. The plaintiff was advised of his right to contest the interim suspension in writing.[6]

---

[5] While the Notice informed the plaintiff that he may have violated additional provisions of the Penn State Student Code of Conduct, including Section 3.05, Stalking, and Section 11.03, Failure to Comply with Directive or Condition, the plaintiff was not formally charged with violations of those provisions.

[6] Section V(F)(2) of the Code of Conduct provides, in relevant part:

c.  Students wishing to contest an interim suspension action may do so through the Office of the Assistant Vice President for Student Affairs at University Park. At other Penn State locations, students may contest through the Director of Student Affairs (or equivalent) or Chancellor. The student's appeal must be in writing and include the following information:

(continued...)

On December 1, 2015, the plaintiff e-mailed defendant Strohm reminding him of "the interim suspension and the sanction review." (Doc. 17, App'x 7). On the following day, defendant Strohm responded, in part, by informing the plaintiff of what a sanction review would entail:

> When a student accepts responsibility for the Code of Conduct violation(s) in a disciplinary conference[7], but contests the sanction(s) assigned by the case manager, the student may request that the assigned sanction be reviewed. The Sanction Review will ordinarily be a review of the written record of the case, unless otherwise determined by the person reviewing the sanction. The student will compose a written explanation of the rationale for contesting the sanction and will submit this statement to the Office of Student Conduct case manager. The statement, as well as a memo from the case manager, will be forwarded with the student's file to the sanction reviewer. The sanction reviewer has the ability to sustain or modify the sanctions. The student is then notified by the case manager once a decision has been

---

[6](...continued)
- Name
- Student ID
- Rationale for the request
- Any documentation that supports that the student would not pose a risk

\* \* \*

e. The interim suspension does not replace the regular conduct process, which shall proceed on the normal schedule.

(Doc. 17, App'x 1).

[7]It is important to note here that the plaintiff had only one disciplinary conference – that which took place on November 17, 2015.

9

reached.

(Doc. 17, App'x 7). Mr. Strohm then directed the plaintiff to "let [him] know what [the plaintiff] [was] thinking". The plaintiff responded that same morning that he was thinking about doing the sanction review. Defendant Strohm informed the plaintiff that, if he wanted a sanction review, he should ". . . state in [his] email that [he] would like a sanction review, and then work on explanation of the rationale for contesting the sanction and submit [it] to [defendant Strohm] as soon as possible . . ." so they could "get the ball rolling". The plaintiff was directed to let defendant Strohm know if he was going to opt for the sanction review so that defendant Strohm could "cancel the hearing".[8] The plaintiff responded that he wished to have a sanction review and was informed by defendant Strohm that he should get in his statement "by Friday". The plaintiff submitted his sanction review statement on the following day, December 3, 2015, in which he made various admissions with respect to his behavior toward the complainant, including circumventing a block she had placed on her phone so that he could send her text messages and violating the Administrative Directive. (Doc. 17, App'x 9). The plaintiff argued why he felt the sanctions against him were too harsh and asked that he be allowed to return to classes.

---

[8]The only hearing that the plaintiff had scheduled at the time was the hearing that he had requested after the November 17, 2015, conference.

Defendant Donald Holtzman, Penn State's Senior Director of Student Services and Special Projects, conducted the plaintiff's sanction review and concluded that the proposed sanctions, including the Spring 2016 semester suspension, were appropriate. Despite the interim suspension, the plaintiff was allowed to make arrangements to take his final exams and receive credit for the courses he took in the Fall 2015 semester. (Doc. 17, App'x 11).

The plaintiff petitioned for a review of defendant Holtzman's decision, which was conducted by Senior Director Danny Shaha on January 15, 2016. After reviewing the record in the plaintiff's case, Mr. Shaha concluded that it was "clear that the conduct process articulated in the OSC Procedures document were followed." (Doc. 17, App'x 12).

Just prior to the hearing in this matter, on January 22, 2016, the plaintiff was convicted on a charge of Harassment - Course of Conduct with No Legitimate Purpose after a summary trial before a magisterial district judge in Dauphin County. The charges were initiated by the Penn State University Police Department and were based upon the plaintiff's behavior toward the complainant which led to his suspension. See Commonwealth of Pa. v. Timothy Scott Howe, Docket No. MJ-12201-NT-0000741-2015.[9]

---

[9]The plaintiff is currently awaiting another summary trial on a charge of Harassment - Following in a Public Place issued by the Pennsylvania State Police, Harrisburg. See Commonwealth of Pa. v. Timothy S. Howe, Docket No. MJ-12304-NT-0000591-2015.

11

### A.     Reasonable Probability of Success on the Merits[10]

With the above in mind, the court looks to the factors which must be considered in ruling on the plaintiff's motion for injunctive relief. The first is whether the plaintiff has established a reasonable probability of success on the merits of his claims. Although the plaintiff argues that he is "likely to prevail on the merits of his due process and breach of contract claims", he only discusses issues of due process in his filings. In order to establish a claim for breach of contract under Pennsylvania law, the plaintiff must establish: (1) the existence of a contract and its terms, (2) the breach of a duty created by the contract, and (3) damages resulting from that breach. CoreStates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999). The plaintiff has addressed none of these factors in the materials supporting his motion for injunctive relief. In fact, his only reference to a contract in his materials is that "published procedures for students . . . are in fact a contract." However, the Pennsylvania courts have "declined to construe the student handbook of a public university as a contract between the public university and the student." See Tran v. State Sys. of Higher Educ., 986 A.2d 179, 183 (Pa. Cmwlth. 2009). The plaintiff has therefore not established a reasonable

---

[10]As indicated at the hearing in this matter, this merits determination is only for purposes of the instant motion for injunctive relief.

probability of success on the merits of his breach of contract claim.[11]

As for the plaintiff's claim of due process violations, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). However, due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances"; instead, it is "flexible and calls for such procedural protections as the particular situation demands." Id. at 334 (citations and internal quotation marks omitted).

In support of his claim of due process violations, the plaintiff argues that he was entitled to receive, but did not receive, notice of the charges against him prior to the informal disciplinary conference. (Doc. 6, Ex. A). As to this claim, the court notes initially that the plaintiff cites to a version of the Code of Conduct which was not in effect at the time he received his disciplinary conference. The version which was in effect at the time of the plaintiff's conference is attached to the defendants' opposing brief. (Doc. 17, App'x 1). In any event, neither version of the Code of Conduct requires that the plaintiff receive notice of the charges prior to the conference. In fact, one of the

---

[11]In any event, as discussed at the hearing on this matter, any breach of contract by the defendants would be compensable by monetary damages. As such, the plaintiff can not establish irreparable injury and is not entitled to injunctive relief as to this claim.

reasons for the informal conference is to provide the plaintiff with notice of the charges against him. The court finds no due process violation with respect to the notice provided.

The plaintiff next argues that his due process rights were violated when he was not given the hearing he requested when he contested the charges at his disciplinary conference. However, the record demonstrates that, while the plaintiff initially contested the charges and requested a hearing, he later waived his right to a hearing by requesting a sanction review. The plaintiff has insisted throughout his filings and at the hearing in this matter that he only filed the sanction review in order to challenge his interim suspension. However, as outlined in the Code of Conduct, this is not the avenue by which one challenges an interim suspension. As set forth above, the sanction review would entail when a student accepts responsibility for Code of Conduct violations in a disciplinary conference. The plaintiff acknowledges in his filings that he was not issued new charges in relation to his interim suspension and that he had only one disciplinary conference at the time he requested his sanction review. Moreover, in explaining to the plaintiff what a sanction review would entail, defendant Strohm advised the plaintiff of the consequences of requesting a sanction review, namely that his hearing would be cancelled. The plaintiff had only one hearing pending at the time he requested his sanction review, which was the one he requested at the disciplinary

conference. Knowing this, the plaintiff decided to request the sanction review. At the hearing on this matter, the plaintiff stated that he did not realize he could waive his right to a hearing. However, it is clear from the Code of Conduct that a student can waive the right to a hearing by requesting a sanction review. This is exactly what the plaintiff did in this case.

Next, the plaintiff argues that his due process rights were violated when he was not allowed to examine all of the evidence against him. As to this contention, a student is not entitled to "discovery" as if he were a litigant in a civil or criminal proceeding. Schools must simply provide an accused student with notice of the charges they face and the nature of the evidence supporting those charges. See Johnson v. Temple Univ. of Commonwealth Sys. of Higher Educ., 2013 WL 5298484, at *12 (E.D. Pa. Sept. 19, 2013) (citing Flaim v. Medical College of Ohio Flaim, 418 F.3d 629, 639 (6th Cir. 2005) (finding that notice was sufficient where the plaintiff was made aware of the charges against him, but was not provided with full witness list or indication of the documents that were to be introduced at the hearing); Gomes v. Univ. of Maine Sys., 365 F.Supp.2d 6, 22 (D.Me. 2005) (finding no violation of due process where a university failed to produce an entire police report to an accused student prior to a disciplinary hearing in light of a general rule against imposing discovery requirements on university disciplinary proceedings). The plaintiff acknowledged in his Student Summary Conference Form that he was

advised of the charges against him and the allegations supporting those charges, among other things. No more was required in this respect.

Finally, in his additional brief, the plaintiff raises a claim that he was discriminated against because of his sex in violation of Title IX, 20 U.S.C. §§1681, et seq. The court finds no evidence in support of this claim, especially in light of the plaintiff's decision to admit to the charges against him and opt for a sanction review. In his sanction review statement, the plaintiff admitted to harassing behavior toward the complainant, as well as to violating the administrative directive to not have any contact with her. The court finds that the plaintiff has no reasonable probability of success on the merits of this claim.

**B. Irreparable Injury**

The plaintiff argues that he will suffer irreparable injury if an injunction is not issued in this case. Specifically, he argues that his current suspension will interfere with his ability to complete his education "in a timely and ordinary manner" and that, if he is not immediately reinstated, he "will be forced to take an entire year off of his education since the courses [he] needs to continue his engineering degree are only offered in the Spring semester. Financially, the plaintiff argues that he will lose scholarship money, as well as wages from his positions as a teacher's assistant, student grader and peer tutor.

As indicated by the court at the plaintiff's hearing on this matter, there is no doubt that the plaintiff has suffered harm in this case. The question is whether he has suffered irreparable harm. Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. Speculative injury does not constitute a showing of irreparable harm. Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980); see also Public Serv. Co. of N.H. v. Town of West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61 (1964)).

The court finds that the plaintiff has not suffered irreparable injury. With respect to the plaintiff's claims of lost scholarships and wages, clearly the plaintiff can be compensated for these with monetary damages. Moreover, with respect to the plaintiff's claim of a delay in education, the plaintiff did not establish by a preponderance of evidence, as he is required to do, that he is entitled to injunctive relief. To this extent, it was proffered at the hearing that, regardless of the plaintiff's suspension for the Spring 2016, he would not

finish his required course studies in the time in which he alleges. To this extent, the plaintiff apparently contemplated changing majors and, as a result, did not take any engineering courses in the Fall of 2015. (Doc. 17, App'x 13). Because the plaintiff did not take any of the mandatory engineering classes in the Fall semester, he would now require at least four additional semesters of matriculation, irrespective of whether he attends classes in the Spring 2016 semester or not. In any event, the court finds that even if the plaintiff would experience a delay as a result of his suspension, this would not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted. See e.g., Schulman v. Franklin & Marshall Coll., 538 A.2d 49, 52 (Pa. Super. 1988) (student failed to establish that he would be irreparably harmed absent an injunction, as he could be compensated by money damages for time lost from the classroom). Thus, the plaintiff has failed to establish irreparable injury to support his request for injunctive relief.

### C.    Harm to the Defendants/Public Interest

The factors concerning whether the issuance of an injunction would cause greater harm to Penn State than the benefit which would be realized by the plaintiff if an injunction were issued and the public interest in this case go hand in hand. Here, the court considers that Penn State not only has an obligation to the plaintiff, but also to the many other students of the Penn

State community. As such, when allegations arise such as those presented in this case against the plaintiff, Penn State has an obligation to act in a manner which is reasonable and just. The court finds Penn State's response was reasonable and just. The plaintiff was given an opportunity to attend Penn State without interruption. He could have done so by abiding by the Code of Conduct and the Administrative Directive. The plaintiff chose not to do so. Even with the violation of the Administrative Directive, the plaintiff essentially suffered only those sanctions which were related to the original charges, although he faced far greater sanctions than those imposed, including expulsion.[12]

The court considers that Penn State has a significant interest in disciplining students who engage in misconduct and protecting the other students within its community. The Third Circuit and the Supreme Court have both long recognized "the need for maintaining order and discipline in our schools without prohibitive costs and in a manner that will contribute to, rather than disrupt, the educational process." Palmer by Palmer v. Merluzzi, 868 F.2d 90, 95 (3d Cir. 1989) (citing Goss, supra.). The plaintiff admitted to various infractions in this case in his sanction review statement. Were the court to grant injunctive relief in this case, that would put Penn State in a

---

[12]Even with the interim suspension, the plaintiff was allowed to take his finals and receive credit for the courses he took in the Fall 2015 semester.

position of being second-guessed by the court every time it imposes a sanction upon a student for this type of behavior. This is in the interest of neither Penn State nor the community. Unless there is a clear violation of rights, which the court has not found for purposes of the instant motion, the courts should not be involved in the determination of disciplinary matters in the university setting.

In light of all of the foregoing, the court finds that the plaintiff has failed to meet his burden to establish that a TRO/PI is warranted in this case. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 2, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0102-01.wpd